UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re Application of Anatoli Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd. for an Order Directing Discovery from Amundi Investments USA Pursuant to 28 U.S.C. § 1782 | Case No. _____<br><br>**Declaration of Jessica A. Beess und Chrostin in support of** *Ex Parte* **Petition for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782** |

---

I, Jessica A. Beess und Chrostin, declare as follows:

1.       I am an attorney duly admitted to practice in New York.  I am an associate employed by King & Spalding LLP, attorneys of record for Anatoli Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd. (together, "Petitioners") in this matter.  The facts set forth herein are personally known to me, and, if called as a witness, I could and would testify competently thereto.  Where I rely on information provided by others, I identify the source of information which is true to the best of my knowledge, information and belief.

2.       Petitioners submit this application for assistance in aid of proceedings commenced in Belgium, Luxembourg, Sweden, and the Netherlands (the "Foreign Proceedings") for the purpose of recognizing and enforcing an arbitral award (the "Award") rendered in their favor against the Republic of Kazakhstan ("ROK") in the amount of $497,685,101.00, plus interest.  A true and correct copy of the Award is attached hereto as Exhibit A.

3.       Following the tribunal's issuance of the Award, the ROK commenced a proceeding in the Svea Court of Appeal (the "Svea Court") in Stockholm, Sweden, the seat of the arbitration, seeking to have the Award set aside on a number of grounds.  The Svea Court rejected the ROK's set-aside application in its entirety and issued a judgment refusing to set

aside the Award.  The Svea Court also denied the ROK leave to appeal its ruling and awarded Petitioners over $3 million based on its legal costs in the Svea Court proceedings.  A true and correct copy of the judgment of the Svea Court in its original Swedish as well as an English translation is attached hereto as Exhibit B.

4.      Despite the Svea Court's refusal to grant the ROK leave to appeal its judgment, the ROK nonetheless attempted to bring the matter before the Supreme Court of Sweden through a motion for extraordinary review; that motion was also denied.  The Award is thus final and not subject to any further appeal.  Nevertheless, the ROK has refused to pay any part of the Award.

5.      Following the Svea Court's refusal to set aside the Award, Petitioners commenced proceedings to enforce the Award in Sweden, and in September and October 2017, attached a series of assets in Sweden.  Petitioners later commenced similar proceedings in the Netherlands, Belgium, and Luxembourg around the same time.  One of the focuses of these enforcement efforts was to attach, and ultimately execute, assets that Petitioners understand to be part of the ROK's "National Fund."

6.      The ROK has formed and maintains several sovereign wealth funds.  One of these funds is known as the National Fund.  The National Fund was established pursuant to a decree of the President of the ROK dated August 23, 2000.  A true and correct copy[1] of Presidential Decree No. 402 is attached hereto as Exhibit C.  According to that decree, the National Fund is not a separate juridical or legal entity, but rather is an aggregation of financial "assets, concentrated in the account of the Government of the [ROK] at the National Bank."  *Id*.  The National Bank of the Republic of Kazakhstan (the "National Bank") is the ROK's central bank.

---

[1]     This decree originally appears in the Russian language and was informally translated into English using Google Translate.

7.      According to the Resolution No. 655 of the Kazakhstan Government (2001), the National Bank manages the assets of the National Fund as a trustee on behalf of the ROK and in strict accordance with a Trust Agreement.  A true and correct copy[2] of Resolution No. 655 is attached hereto as Exhibit D.

8.      According to an article published in a Kazakh legal periodical titled "Юрист" ("Lawyer"), the National Bank holds no ownership interest in the assets comprising the National Fund.  A true and correct copy of this article,[3] titled "The Legal Regime of the National Fund of the Republic of Kazakhstan," *available at* http://journal.zakon.kz/203567-pravovojj-rezhim-nacionalnogo-fonda.html, is attached here to as Exhibit E (relevant discussion at page 3).  That fact is also corroborated by an article published by the University of Michigan titled "Sovereign Wealth Fund Issues and the National Fund of Kazakhstan," a true and correct copy of which is attached hereto as Exhibit F (explaining on page 20 that the National Fund is "essentially owned by the Ministry of Finance" and "managed by the National Bank of Kazakhstan").

9.      According to the witness statement of James Robert Ronald (the "Ronald Declaration"), which was submitted to a London court on December 8, 2017 in the course of English court proceedings between the ROK and The Bank of New York Mellon SA/NV ("BNYM SA/NV"),[4] the National Bank carries out trust management services with respect to the National Fund on behalf of the ROK.  A true and correct copy of the Witness Statement of James Robert Ronald dated December 8, 2017, is attached hereto as Exhibit G.  According to the Ronald Declaration, the National Bank appointed BNYM SA/NV as the global custodian for the

---

[2]   This decree originally appears in the Russian language and was informally translated into English using Google Translate.

[3]   This article originally appears in the Russian language and was informally translated into English using Google Translate.

[4]   According to his Declaration, Mr. Ronald is the Managing Director and Relationship Executive (EMEA) at BNYM SA/NV (London Branch).

National Fund's assets.  *Id.*  BNYM SA/NV holds 14 portfolios of securities and fixed income

assets for the National Bank, with each portfolio being managed by a separate external manager.

Amundi is one of the external managers.  *Id.*

      10.     Amundi Investments USA ("Amundi") maintains a location in this district at 1301

Avenue of the Americas, New York, NY 10019.  A true and correct copy of these records is

attached hereto as Exhibit H.

      11.     Petitioners seek *ex parte* relief because applications for judicial assistance

pursuant to 28 U.S.C. § 1782 are routinely granted on an *ex parte* basis, and proceeding in that

manner has been endorsed by this Court as well as the Second Circuit.  *See In re Esses*, 101 F.3d

873 (2d Cir. 1996); *In re Aldunate*, 3 F.3d 54 (2d Cir. 1993); *In re Godfrey*, 526 F. Supp. 2d 417

(S.D.N.Y. 2007).  *Ex parte* relief is appropriate in the § 1782 context because the respondent

may challenge the subpoena after it is served.  *See Gushlak v. Gushlak*, 486 F. App'x 215 (2d

Cir. 2012) ("…[I] it is neither uncommon nor improper for district courts to grant applications

made pursuant to § 1782 *ex parte*.  The respondent's due process rights are not violated because

he can later challenge any discovery request by moving to quash pursuant to Federal Rule of

Civil Procedure 45(c)(3).").

      I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York
March 1, 2018

_____
Jessica A. Beess und Chrostin